UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES K. COLLINS, M.D. | § | Civil Action No.: 20-1897 |
|     Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| D.R. HORTON-TEXAS, LTD. | § | |
|     Defendant | § | |

## **<u>COMPLAINT</u>**

Plaintiff, JAMES K. COLLINS, M.D. (COLLINS) files this complaint against Defendant, D.R. HORTON-TEXAS, LTD (HORTON) and, in support hereof, states as follows:

### **<u>JURISDICTION AND VENUE</u>**

1.     This action is instituted pursuant to Rule 60(b)(4), (d)(1) and (d)(3) of the Federal Rules of Civil Procedure and the Declaratory Judgment Act, 28 U.S.C. §§2201-2202 to vacate the final judgment entered in 1944 in this Court in the original lawsuit numbered 666 entered without joinder, notice or service against record title owners of the Texas General Land Office Land (GLO) patent, Frederick Sieberman Survey, A-497, depriving the owners, without due process, of the land the subject of this suit for vacatur.   A copy of the judgment is attached as Exhibit A ("Federal Judgment").

2.     Jurisdiction exists because an independent action under Rule 60(b) brought in the same court as the original lawsuit does not require an independent basis for jurisdiction.   *United States v. Beggerly,* 524 U.S. 38, 47 (1998).   This action is available to prevent a grave miscarriage of justice brought about when parties in the original cause number 666 committed fraud of this Court by "moving" the boundary lines of the contiguous and exclusive James Hodge, A-19 survey to fraudulently usurp the land of the Frederick Sieberman Survey, A-497, which from the

1

sovereign to this date is a mutually exclusive survey as to use, title ownership, patent and ground surveys certified in the GLO. This action is "to prevent a grave miscarriage of justice" for land title theft that only became known when a stranger to title, HORTON, asserted title to the Sieberman land in 2016 based on the metes and bounds description in the Federal Judgment subject to the requested vacatur.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and this Court has personal jurisdiction over Defendant because all of the events underlying this Complaint have occurred within the territorial jurisdiction of this District.

4.      Specifically, on December 6, 1941, the original lawsuit assigned case number 666 was brought in diversity in this Court by the owners of the one-league James Hodge Survey, A-19, in Montgomery County, Texas. A copy of the original lawsuit cause number 666 is attached as Exhibit B. The basis for the federal suit was to partition only the Hodge Survey by and between the Hodge record title owners to resolve allegations of improper timber operations and theft within the Hodge. In March 1944, a bench trial commenced in this Court that referenced, joined, served and noticed only the Hodge owners, who were the only participants in such trial. A copy of the appellate opinion, evidencing only the Hodge owners were joined in the federal suit, is attached as Exhibit C supporting such facts. On May 31, 1944, this Court entered the Federal Judgment wherein ONLY the owners of the Hodge were joined, served, referenced, included, participated and noticed of such Federal Judgment.[1]   See Exhibit A.

_____

1 As will be discussed *infra*, the Hodge owners set out to define the timber rights of landowners on an adjacent survey—the James Hodge Survey—but improperly assigned interest in undeveloped lands of the Frederick Sieberman Survey to the parties before the court in that case. HORTON later purchased the land interest (without warranty) assigned by the Hodge owners, using the Federal Judgment in this federal court's decision as the basis for claiming title to the portion of its purchase that fell within the Sieberman Survey.

5.      The venue is also proper in this action under 28. U.S.C. 1391(b) because the subject judicial district is the location in which the events giving rise to the claim occurred and where the property that is the subject of the action is situated.

6.      Venue is proper in this Court because it was this Court that divested the record title owners of the patented GLO Frederick Sieberman Survey, A-497, in Montgomery County, Texas, of their property interest without joinder, notice or service of such suit or judgment in 1944.   The Hodge Survey owners committed fraud on this Court by lying that the property lines of the GLO's Hodge Survey extended 1000 feet to the south of the Hodge Survey's southern boundary witness marks contrary to GLO's certified field surveys that properly show the Sieberman Survey is a patented survey exclusive of the James Hodge Survey and is recognized in the GLO certified records.[2]

## PARTIES

7.      Defendant, D.R. HORTON-TEXAS, LTD. D/B/A D.R. HORTON AMERICA'S BUILDER (HORTON), is a limited partnership registered and doing business in the State of Texas, whose principal office address is 1341 Horton Circle, Arlington, Texas   76011. Defendant may be served with process herein by service on its registered agent, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.   HORTON is a successor in interest to the Hodge Survey record title owners, a stranger to the Sieberman Survey chain of title and who now claims the Sieberman Survey land.

8.      Plaintiff, JAMES K. COLLINS, M.D. (COLLINS) is resident of Montgomery County, Texas.   COLLINS acquired title to the Sieberman Survey from the successors of

---

2 *See* Certificate No. 109, "Frederick Seibermann (sic)," GLO archives, Vol. 17, No. 325 (May 8, 1866).   The official documentation of the land grant is also available at
https://s3.glo.texas.gov/ncu/SCANDOCS/archives_webfiles/arcmaps/webfiles/landgrants/PDFs/3/1/1/311087.pdf
and   https://cgis.glo.texas.gov/cfGIS/glomapjs/basefile.cfm?SDENUM=483390449

Frederick Sieberman, to whom the Republic of Texas originally granted the land in 1866. COLLINS is a descendent or successor in interest of the record title of the Sieberman Survey land deraigned from Frederick Sieberman to whom the State of Texas awarded such land for his heroism as a martyr at Goliad for Texas' Independence, including through proper chain of title from and as descendants and successors in interest of Frederick Sieberman, Vernon Evans and James Collins (1828-1889).

## STANDING

9.     COLLINS has standing because his record title ownership of the Sieberman Survey land, obtained through his descendants or successors in interest, was converted under the pretext of the Federal Judgment's validity.   It is, however, void in the absence joinder and service as to the Sieberman land.   In June 2016, the first time any entity or person has challenged the ownership or validity of the Sieberman Survey, HORTON claimed ownership of COLLINS' Sieberman land in a quiet title claim in the 284th Montgomery County District Court.   HORTON's claim was founded solely on the validity of the Federal Judgment, the subject of this suit for vacatur.   The state court honored the void Federal Judgment (ignoring the due process violations and COLLINS' chain of title from the sovereign) and by summary judgment ordered that the Frederick Sieberman Survey, A-497, did not exist—contrary to current state and county government records and even HORTON's own records to the contrary.   Such state order establishes actual and imminent harm to COLLINS by memorializing the "taking" of COLLINS' Sieberman land without joinder or service of the Sieberman Survey record title owners, now COLLINS.   This Court can redress such injury of the fraudulent "extinguishment" of an existing state land survey now owned by COLLINS by this vacatur suit to void the Federal Judgment as to the patented Sieberman Survey.

10.     The record title ownership of the Sieberman Survey is deraigned from the sovereign of the soil to COLLINS as a descendent or successor in interest of the record title.   Since HORTON is a stranger to the title of the Sieberman Survey, but had "captured" the Sieberman land mass by including it in a metes and bounds description in a deed HORTON prepared into itself to be part of the Hodge Survey land HORTON purchased from the Hodge Survey owners without warranty in Dec. 2012.   To defraud the state court, HORTON simply claimed the Sieberman Survey did not exist, after including it in its own subdivision surveys, because the Federal Judgment arrogated it.   The Sieberman Survey undisputedly exists and HORTON admitted it.   It is a GLO patent exclusive of all other surveys in which the Sieberman record title owners, now COLLINS, have never been legally divested in the absence of due process.   Below is evidence of the current existence of COLLINS' Sieberman Survey as identified by the certified records of the Montgomery County Appraisal District screenshot of October 2014:



11.     Below is evidence of the existence of COLLINS' Sieberman Survey as identified by the State of Texas' GLO online information for the Sieberman Survey which can also be accessed by hyperlink at:   *See* Certificate No. 109, "Frederick Seibermann (sic)," GLO archives, Vol. 17, No. 325 (May 8, 1866).   The official documentation of the land grant is also available at

https://s3.glo.texas.gov/ncu/SCANDOCS/archives_webfiles/arcmaps/webfiles/landgrants/PDFs/

3/1/1/311087.pdf   and

https://cgis.glo.texas.gov/cfGIS/glomapjs/basefile.cfm?SDENUM=483390449



12.     Below is evidence of the existence of Texas' GLO survey master plat showing the

current location of the Sieberman survey certified current as of July 5, 2016:



6

13.     Below is HORTON's own survey prepared by HORTON for its own subdivision showing the existence of the Frederick Sieberman survey filed with the City of Conroe and Montgomery County planning commissions on or near March 2015:



Collins 000172

14.     COLLINS has injury-in-fact because his land title deraigned from the sovereign was legally challenged in state court for the first time in 2016 by a stranger to the Sieberman Survey title, HORTON.   COLLINS' injury is caused solely by the Federal Judgment that is undisputedly void in the absence of joinder or service by the Hodge Survey owners.   COLLINS' injury can be redressed by a favorable decision of vacatur of COLLINS' Sieberman Survey interest by this Court.   COLLINS has standing as a descendant or successor-in-interest and current record title owner from the sovereign of the land the subject of this vacatur.

## EXHIBITS

15.     The exhibits attached to this Complaint are as follows:

A.     Judgment, Cause No. 666, *Lillie B. McCormack, et al. v. Grogan Cochran Lumber Company, et al.* (includes on James Hodge Survey, A-19, owners), from the

District Court of the United States for the Southern District of Texas – Houston Division dated May 31, 1944;

B.      Complaint, Cause No. 666, *Lillie B. McCormack, et al. v. Grogan Cochran Lumber Company, et al.*, (includes on James Hodge Survey, A-19, owners) filed in the District Court of the United States for the Southern District of Texas – Houston Division on Dec. 6, 1941;

C.      Appellate Opinion, Docket No. 11482, *McComb, et al., v. McCormack, et al.*, (includes on James Hodge Survey, A-19, owners) 159 F.2d 219 (5th Cir. 1947), *affirmed on grounds unrelated to the subject Complaint)*;

D1.     Toni Sharretts Collins Affidavit and Attorney Title Opinion dated September 9, 2016;

D2.     James Collins' Affidavit dated May 26, 2020;

E.      Texas General Land Office Records Certified July 5, 2016 - that include excerpts of the Montgomery County Master Survey Map dated March 31, 1943 updated through Dec. 6, 2002 showing the existence of the mutually exclusive James Hodge Survey, A-19 and the Sieberman Survey, A-497, as well as the actual one (1) league patent for the Hodge and the patents and no-conflict surveys for the Sieberman.   A current hyper-link       to       the       GLO       files       and       website: https://s3.glo.texas.gov/ncu/SCANDOCS/archives_webfiles/arcmaps/webfiles/landgrants/PDFs/3/1/1/311087.pdf

F.      Texas General Land Office Records and Survey Maps dated May 31, 2016. A current map can be accessed showing the existence of the GLO's Sieberman Survey on the                              GLO's                              website: https://cgis.glo.texas.gov/cfGIS/glomapjs/basefile.cfm?SDENUM=483390449

G.      Montgomery County Appraisal District Records of Oct. 2014 - screenshots of their records of the Sieberman Survey.

H.      City of Conroe Planning Commission Records of April 21, 2016 of HORTON's application for subdivision - that show HORTON, its engineers, and the City of Conroe Planning Commission acknowledge the existence of the Sieberman Survey of which HORTON claims does not exist because its land was divested and opined out of existence from the Sieberman Survey owners by the void Federal Judgment from this Court by the void Federal Judgment from this Court the subject of this suit for vacatur.

I.      City of Conroe Planning Commission Records of Aug. 6, 2015 of HORTON's application for subdivision - that show HORTON, its engineers and the City of Conroe Planning Commission acknowledge the existence of the Sieberman Survey, which HORTON also claims does not exist because its land was divested and opined out

of existence from the Sieberman Survey owners by the void Federal Judgment from this Court by the void Federal Judgment from this Court the subject of this suit for vacatur.

J.      City of Conroe Planning Commission Records of Sept. 15, 2016 of HORTON's application for subdivision - that show HORTON, its engineers, and the City of Conroe Planning Commission acknowledge the existence of the Sieberman Survey, which HORTON also claims does not exist because its land was divested and opined out of existence from the Sieberman Survey owners by the void Federal Judgment from this Court by the void Federal Judgment from this Court the subject of this suit for vacatur.

K.      City of Conroe Planning Commission Records of Nov. 3, 2016 of HORTON's application for subdivision - that show HORTON, its engineers, and the City of Conroe Planning Commission acknowledge the existence of the Sieberman Survey, which HORTON also claims does not exist because its land was divested and opined out of existence from the Sieberman Survey owners by the void Federal Judgment from this Court by the void Federal Judgment from this Court the subject of this suit for vacatur.

L.      HORTON Records – from their agent and surveyor, Robert L. Boelsche that show HORTON and its engineers, used the records from Montgomery County, the GLO, and the public property records to discern the title to the Hodge land they acquired without warranty in a cash sale, and were fully aware of the existence of the Sieberman Survey, which HORTON's seller did not own record title because its land was improperly divested and opined out of existence from the Sieberman Survey owners by the void Federal Judgment from this Court the subject of this suit for vacatur.

M.      HORTON Emails - from Oct. 2012 between HORTON employees prior to HORTON's purchase of the HODGE land that shows HORTON was fully aware of the existence of the Sieberman Survey of which HORTON's seller did not own record title. HORTON later claimed the Sieberman Survey did not exist, so HORTON owned it because the Federal Judgment, the subject of this suit for vacatur, "extinguished" the Sieberman Survey despite the absence of due process.

## STATEMENT OF FACTS

16.      Frederick Sieberman fought for the independence of Texas from Mexico.   On March 27, 1836, he and over 400 other Texians were massacred at Goliad.   For his service, the State of Texas issued Sieberman's estate 1/3rd league of land, the Frederick Sieberman Survey, memorializing his heroism.   *See supra* fn. 2.   From May 1-4, 1866, John Marshall Wade, Surveyor of Montgomery County, surveyed the land, then subsequently filed the plats and field notes with the GLO.   On May 29, 1866, Texas' Governor Andrew Hamilton granted Sieberman's

estate a land patent and assigned Abstract 497.   The Sieberman Survey is situated to the south of the James Hodge Survey and north of the David Thomas Survey.   In 1878, a second field survey by special deputy Montgomery County surveyor Sam Clepper confirmed the Sieberman Survey did not conflict with other adjacent land surveys.   The GLO records confirmed Mr. Clepper followed Mr. Wade's original footsteps and found Mr. Wade's witness marks to corroborate with no conflict, then filed his plats and notes with the GLO, thus confirming the exclusivity and existence of the Sieberman Survey.   COLLINS acquired title of the Sieberman Survey by special warranty deeds from Sieberman's successors.

17.     In 1831, Mexico granted to colonist James Hodge one-league of land surveyed by Elias Wightman with the ground survey and patent filed with the GLO.   The Hodge Survey is located to the north and contiguous to the Sieberman Survey.   It was determined in 1866 and again in 1878 by two separate surveyors (Mr. Wade and Mr. Clepper, respectively) to be mutually exclusive of the Sieberman Survey.   *See supra* fn. 2.

18.     On December 6, 1941, the day before Pearl Harbor was bombed, the Hodge Survey owners brought suit against each other in federal diversity under Cause No. *666* over timber rights and operations but limited *only* to the Hodge Survey ("Federal Suit").   Only the Hodge Survey owners were joined, served or notified of the Federal Suit.   "The principal purpose of the suit and controlling matter in the suit… was the establishment of their [timber conversion and interior partition] claims regardless of the location of the James Hodge Survey."   *McComb, et al. v. McCormack, et al.,* 159 F.2d 219, 225 (5th Cir. 1947).

19.     Ultimately, this Court rendered the Federal Judgment on May 31, 1944, one week before the Allies landed in Normandy on D-Day, that purports to locate and partition the James Hodge survey amongst the parties therein but that also fraudulently allocated a portion of the

Sieberman Survey, without accounting for or even making reference to that survey or the records of the GLO—the repository of state property records that actually defines real property ownership in Texas as a matter of law.   The decision amounted to this Court's simply ignoring due process as well as Texas law and its requirements for setting boundaries in favor of a system of its own devising. It is undisputed that the Sieberman owners were never served or notified of the Federal Judgment, nor did they voluntarily appear.   It is undisputed that the Sieberman owners, now COLLINS, never received actual, legal or constructive notice of the Federal Judgment until HORTON filed a state trial court suit to quiet title in June 2016 in the 284th Montgomery County Judicial District Court in Texas.

20.     In June 2016, COLLINS informed the trial court of the Sieberman patent, title history, Federal Judgment and its constitutional infirmity as to COLLINS' interest in the Sieberman survey in absence of personal jurisdiction over the owners.   COLLINS informed the trial court of the details of the federal questions sought to be reviewed with sufficient precision to enable the state court to have considered such constitutional violations in COLLINS' petition for trespass to try title in June 2016, their Response to HORTON's Motion for Summary Judgment (MSJ) in September 2016, and their Sur-Reply to MSJ in October 2016.   COLLINS argued to the trial court that "for one to be bound by a judgment in a suit to which it was not a party and of which it had no notice is unconstitutional." *Auster Oil & Gas, Inc. v. Stream,* 891 F.2d 570, 581 (5th Cir. 1990).   COLLINS requested that, since no Sieberman title owners received notice of the Federal Suit or Federal Judgment, and such Federal Judgment was HORTON's only foundation for title to it, the state trial court should set aside consideration of the void Federal Judgment as a basis for HORTON's title to COLLINS' Sieberman Survey land.   Nevertheless, the trial court—by summary judgment--granted title to HORTON in derogation of the requisites of Texas' title law

and federal constitutional protections and made no attempt to review the merits of COLLINS'
record title ownership but relied upon the validity of the Federal Judgment to grant HORTON title
to COLLINS' Sieberman land.   This despite HORTON being a complete stranger to the
SIEBERMAN title and the Sieberman owner's never having been noticed or joined in any suit or
claim that would or could have deprived COLLINS of his land.

21.     A state court cannot "unvoid" an infirm federal judgment so it can be used.   The
state trial court summarily enforced the infirm Federal Judgment as the only grounds to vest title
in a stranger to the title of the Sieberman Survey.   Two wrongs do not make a right.   This Court
should grant vacatur of the Federal Judgment as to the Sieberman land and land owners to a)
correctly adjudicate federal rights, b) uphold the Constitution, c) to discourage and prevent similar
fraud on this Court, d) to prevent future land title theft, e)   to uphold Federal Rule 60(b)(4) and
(d)(3) and e) uphold this Court's mandate that a void judgment remains void.

22.     HORTON claims the void Federal Judgment opined the GLO's currently existing
Frederick Sieberman Survey, A-497, out of existence, so HORTON by default (and with no
connection or mutuality to the Sieberman chain of title from the sovereign) owns the land because
it is a part of HORTON's Hodge survey purchase—CONTRARY TO ALL GOVERNMENT
RECORDS AND ITS OWN SURVEY RECORDS.   No dispute exists that the Federal Judgment
is void as to the Sieberman owners and land.   See Exhibits A-D, which evidence that no
Sieberman owners were named, joined or served in the Federal Judgment, Federal Suit, or
Appellate opinion and substantiates that only the Hodge owners alone participated in the suit in
this Court. It is clear by all the evidence that COLLINS' Frederick Sieberman Survey, A-497
exists, COLLINS owns it and the Federal Judgment is void as to the Sieberman land and owners.
The Hodge owners committed fraud on the court.   The Sieberman owners were never joined or

served the Federal Suit or Federal Judgment.   The Hodge owners, nor their successors including

now HORTON, ever used or made a claim to the Sieberman land before 2016.

23.     The Frederick Sieberman Survey, A-497, land patent currently exists in all

government records including the State of Texas (certified Exhibits E, F and *supra* fn. 2),

Montgomery County (certified Exhibit G), City of Conroe and HORTON (certified Exhibits H-

K), HORTON's Engineers, Texas Railroad Commission and other owners (Exhibit L), and

HORTON's employees, agents and Texas Railroad Commission (Exhibit M), contrary to the

Federal Judgment.   Take judicial notice that HORTON only purchased land in the James Hodge

Survey, so it was critical that they come up with a scheme to claim title to the Sieberman Survey

since they had no record title, obtained title through a warrantless deed on a cash basis.   Their

scheme was to play the "trump" card that the Federal Judgment deraigned title to them but it is

void as to the Sieberman land, and their ruse is a gross miscarriage of justice to COLLINS, this

Court and the Constitution.

24.     On December 20, 2018, the Fourteenth Court of Appeals affirmed the trial court's

decision but wholly failed to address Collins' paramount constitutional arguments citing inapposite

case law and completely ignoring the Constitution relative to the Federal Judgment due process

violation to COLLINS.   Even as the appellate court effectively acknowledged HORTON's

argument that the 1944 federal court judgment placed the boundary line between the Hodge and

Thomas surveys "in the area that would have contained the Sieberman survey," it asked no other

questions about the Federal Judgment, including the crucial questions as to whether COLLINS or

any of their predecessors—holders of interests in the Sieberman Survey—were party to it. The

appellate court's opinion affirming summary judgment for HORTON expressly relied upon the

validity of this Court's Federal Judgment as affecting COLLINS' rights.

13

25.     The Fourteenth Court of Appeals of the State of Texas' opinion should have turned, in major part, on the validity and binding nature of the Federal Judgment and appellate holding, *McComb v. McCormack,* that opined out of existence the Sieberman Survey, a land grant from the sovereign Republic of Texas that *still exists* in the records of the GLO.   Those records openly contradict the sole basis for HORTON's state court summary judgment argument in the trial court and Horton's position taken at the very time HORTON filed its MSJ.   But neither COLLINS nor any other party in privity with COLLINS nor any owner of the Sieberman Survey was made a party to the Federal Suit or Federal Judgment much less given notification or knowledge of an appeal and opinion of the Fifth Circuit.   Consequently, the Federal Judgment had the effect of taking away vested property rights from parties and their successors who were never even made aware of the Federal Suit at the time when it could have been challenged directly.   This Court has the power of vacatur of the Federal Judgment to correct it to the extent that it incorrectly adjudges the rights of the Sieberman heirs, their descendants, successors and assigns, now COLLINS, who is the record title owner from the sovereign and who has used and enjoyed such land without interruption until HORTON's quite title claim in 2016.

26.     The state court made use of a decision from this Article III court to perpetuate, rather than alleviate, an injustice.   The issue strikes at the heart of the integrity of this federal Court's decisions, the propriety of such decisions, and the respect that such decisions will ultimately receive from the public.   This case calls upon this Court to exercise its preeminent authority to guarantee that the legislative and judicial pronouncements of this Court conform with the Constitution of the United States and grant vacatur of this Court's Federal Judgment as to the Sieberman land and owners who were not joined or served.

27.     This issue is pending certiorari before the United States Supreme Court docketed May 19, 2020.   The Supreme Court of Texas denied Petitioners' Petition for Review on July 26, 2019.   The opinion of Texas' Fourteenth Court of Appeals affirming the trial court's decision was reported at 574 S.W.3d 39 on Dec. 20, 2018.   The trial court, the 284th District Court for Montgomery County, Texas, issued no opinion but entered a summary judgment that the Sieberman Survey did not exist on Nov. 8, 2016 and a final judgment on June 9, 2017.   The state court never adjudicated the title to the Frederick Sieberman Survey, A-497, on the merits.   This Court never adjudicated the title to the Frederick Sieberman Survey, A-497, on the merits as the Sieberman owners, descendants, successors or assigns were never joined, served, noticed or in anyway participated in the Federal Suit, Federal Judgment or appeal.   The Sieberman owners never had any opportunity to challenge such the Federal Judgment until 2016, when upon learning of a claim immediately filed suit to defend the title to the Frederick Sieberman Survey, A-497. This Court should properly grant vacatur of the Federal Judgment as to the Frederick Sieberman Survey, A-497.

## ARGUMENTS AND AUTHORITIES

### Federal Rule 60(b)(4)

28.     Federal Rule of Civil Procedure 60(b) provides that a court may relieve a party from a final judgment under certain conditions.   FED. R. CIV. P. 60(b).   More specifically, Rule 60(b)(4) states that the "court may relieve a party or its legal representative from a final judgment [when…] the judgment is void." *Id.*   A party's "legal representative" is one who stands in place and stead of another and reaches only individuals in a position tantamount to that of a party or whose legal rights are so intimately bound up with the parties that their rights are directly affected by the final judgment. *In re Matter of El Paso Refinery, L.P.*, 37 F.3d 230, 234 (5th Cir. 1994). A

judgment is void under Rule 60(b)(4) when the rendering court lacked personal jurisdiction over the defendant for improper service of process. *Diggs v. Ditech Financial, LLC,* 2016 LEXIS 143669 at *1 (W.D. Tex. Oct. 17, 2016) (citing *Recreational Props., Inc. v. SW Mortg. Serv. Corp.,* 804 F.2d 311, 314 (5th Cir. 1986)).

29.     The Sieberman Survey record title owners were never joined, served, noticed or even mentioned in any of the pleadings in the 1941 federal suit (Exhibit B) or the 1944 Federal Judgment (Exhibit A).   At the time the suit was filed in 1941, the Sieberman Survey was a land survey patented by the GLO in 1866 and was still very much existent (Exhibits E & F) and still exists today (Exhibits G-M) and GLO hyperlinks:

https://s3.glo.texas.gov/ncu/SCANDOCS/archives_webfiles/arcmaps/webfiles/landgrants/PDFs/3/1/1/311087.pdf https://cgis.glo.texas.gov/cfGIS/glomapjs/basefile.cfm?SDENUM=483390449

The record title owners in 1941 were Vernon Evans and the heirs of James Collins (Exhibits D1 and D2).   The Sieberman Survey record title owners were never served, joined, noticed, or in no way participated in the 1941 federal proceeding as evidenced by their absence in the petition, judgment and opinion.   (Exhibits A-C).   The James Hodge Survey owners were arguing about the division of ownership within the James Hodge Survey universe of land, and owners and were strangers to the title to the Sieberman Survey.   *Id.*   However, rather than using the GLO patent records and/or following the witness marks and field notes of the patents to determine the boundaries of the James Hodge Survey for the purposes of internal partitioning, as required by Texas Survey law, the James Hodge owners created their *own* "map… calculated by [their surveyor] and not represented by any marks on the ground."   *McComb, et al. v. McCormack, et al.,* 159 F.2d 219, 222 (5th Cir. 1947).   Then, the James Hodge owners without notice to their next door neighbors, the Sieberman Survey record title owners, in a federal suit that the Sieberman

16

owners knew nothing about, lied to this Court and outrageously testified the James Hodge survey extended across what is the Sieberman Survey land with a metes and bounds description so as to never be questioned about the Sieberman Survey patent because this Court was never shown the actual GLO field surveys and patents for either the James Hodge Survey nor the Sieberman Survey that not only existed but had been fully updated on a comprehensive GLO map on March 31, 1943. *Id.* at 224; See Exhibit E.

30.     When an independent action or motion is based on a void judgment under rule 60(b)(4), the district court has no discretion -- the judgment is either void or it is not. *See Honneus v. Donovan*, 691 F.2d 1, 2 (1st Cir. 1982) (*dicta*); *Jordon v. Gilligan*, 500 F.2d 701, 704 (6th Cir. 1974), *cert. denied*, 421 U.S. 991 (1975). *See also* C. Wright & A. Miller, *Federal Practice and Procedure*, § 2862, at 197 (1973).  If a court lacks jurisdiction over the parties because of insufficient service of process, the judgment is void and the district court must set it aside. *See Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985).  *Recreational Properties, Inc. v. Southwest Mortg. Service Corp.*, 804 F.2d 311, 314 (5th Cir. 1986).

31.     Failure to give notice violates the most rudimentary demands of due process of law. *Peralta v. Heights Medical Center, Inc.,* 485 U.S. 80, 84 (1988).  Because courts prefer adjudication on the merits, there must be strict compliance with the legal prerequisites establishing the court's power to render a default judgment (or in this case not even a judgment by default by fraud).  *Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind,* 841 F.2d 646, 649 (5th Cir. 1988).

32.     There is generally no timeliness requirement applicable to a Rule 60(b)(4) motion. *Id.*  Once the validity of service of process has been contested, the plaintiff whose service is drawn into question bears the burden of establishing its validity.  *Carimi v. Royal Carribean Cruise Line, Inc.,* 959 F.2d 1344, 1346 (5th Cir. 1996).

17

33.     Here, the Hodge Survey owners, their descendants, successors and assigns, now HORTON, made no attempt to include, join, service, notice or in any way allow upon the Sieberman Survey owners, their descendants, successors and assigns, now COLLINS, to participate in the Federal Suit. (See Exhibits A-C).  Not even the barest attempt was made to include the Sieberman Survey owners, now COLLINS, in a lawsuit wherein the Hodge survey owners fraudulently testified to this Court that all necessary parties were present.  The Hodge owners admitted into evidence an erroneous survey that usurped and fraudulently converted the Sieberman Survey owner's land, enlarged the James Hodge one-league survey by over 400 acres by describing the land by metes and bounds and never mentioning the patented Sieberman Survey or the Sieberman Survey records title owners.   These lies were completely contrary to the GLO patented ground surveys that to this day still show the *actual* one-league James Hodge Survey (not the fabricated map admitted in the 1941 federal suit )and the *actual* existing Sieberman Survey patents-- both existing and mutually exclusive.   The GLO records corroborate with the witness marks and ground stakes described in the certified records of the GLO—contrary to the Federal Judgment.   Since, the Sieberman owners were not present to participate and object to the erroneous survey plats nor present evidence of their exclusive Sieberman Survey, the Hodge owners were able to lie with impunity to this Court and commit land theft—until now.

34.     Interesting, the Hodge owners did not act on such void Federal Judgment as to the Sieberman owners but rather did nothing.   They did not use, develop, cut timber, take out loans, clear, fence or in any way actually acknowledge or possess the Sieberman land until they sold the "Hodge Only" land to HORTON without warranty for cash in Dec. 2012.   When COLLINS learned of HORTON's claim, COLLINS filed suit immediately in June 2016.   However, the state court validated the void Federal Judgment that the Sieberman Survey was "extinguished," contrary

to COLLINS' record title from the sovereign and all government records that the Sieberman Survey exists and is recognized today.   HORTON does not dispute that the Frederick Sieberman Survey record title owners were not joined, serviced, noticed nor participated in the Federal Suit but, instead, relies wholly on the void Federal Judgment as the basis for their title to the Sieberman Survey land.   This Court should grant vacatur of the Federal Judgment.

### Federal Rule 60(d)(3)
### Fraud on the Court

35.     To prove fraud upon the court under FED. R. CIV. P. 60(d)(3) the movant must establish: (1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) that in fact deceives the court. *Id.* (citing *Herring v. United States,* 424 F.3d 384, 390 (3rd Cir. 2005)). The first element requires proof of common law fraud, *i.e.* a material misrepresentation of fact or law, with knowledge of the falsity, intent to deceive, justifiable reliance and damages. *See Field v. Mans,* 516 U.S. 59, 68-70, (1995) (holding that statutory use of the term fraud incorporates the common law definition, and then turning to the Restatement of Torts for a "distillation" of that definition).   Fraud on the Court is an express ground for relief by motion under Rule 60.   *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238 (1944).

36.     Here, the Hodge Survey owners, their descendants, successors and assigns, now HORTON, made a material misrepresentation of fact or law to the 1944 judge at the bench trial that all the necessary parties were joined and served, then presented an erroneous survey and applied incorrect state substantial law to surreptitiously divest the Sieberman record title owners, now COLLINS of their land.   They did so with knowledge of the falsity, intent to deceive the Court, in which the Court justifiably relied resulting in the damages of COLLINS' record title now being stolen as damages.   The attorneys for the Hodge owners were officers of this Court and perpetuated the fraud directed at this Court and the Court believed the uncontroverted testimony

(because the Sieberman owners were not joined to defend their actual record title), so the Court was in fact deceived.   Thus, the Hodge owners, now HORTON, committed fraud on this Court, so this Court should set such 1944 judgment aside as to the Sieberman land.

**The Federal Judgment Violates the 14th Amendment of the U.S. Constitution.**

37.     The Fourteenth Amendment **does not** allow enforcement of a void federal judgment obtained without personal jurisdiction over and notice to the defendant.   U.S. Const. amend. XIV, Section 1, provides, in relevant part, "No state shall… deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.   *Milliken* v. *Meyer*, 311 U.S. 457 (1940); *Grannis v. Ordean*, 234 U.S. 385 (1914); *Priest v. Las Vegas*, 232 U.S. 604 (1914); *Roller v. Holly*, 176 U.S. 398 (1900).

38.     It is undisputed that the Sieberman owners, including COLLINS, were never personally served with process, joined or noticed of the Federal Suit.   These contentions were not controverted at this Court's 1944 federal bench trial or the state trial court's summary judgment hearing.   Further, COLLINS proved the Sieberman Survey record title owners' superior title from the sovereign into COLLINS and such title had superior legal boundaries as set out in the perfected GLO patent that very much still exists.   The trial court nor appellate court addressed the constitutional conflict of due process.

39.     This means that the Federal Judgment is wrong and should be vacated as to the Sieberman Survey.   A judgment rendered in violation of the Fourteenth Amendment in the

Constitution is void and cannot serve as any basis for depriving a person of their rights. *World-Wide Volkswagon Corp. v. Woodson,* 444 US. 286, 291 (1980).   The Federal Judgment was entered without notice or service, making it a nullity. *Peralta*, 485 U.S., at 84.   Allowing it to stand allows a conflict with this Court's own ruling.

### The Federal Judgment Violates the 10th Amendment of the U.S. Constitution.

40.      The Tenth Amendment **does not** allow federal courts to ignore state law in federal diversity actions. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) (holding that federal courts, when confronted with the issue of whether to apply federal or state law in a lawsuit, must apply state law on issues of substantive law).   Texas law governs interest in land titles as well as surveys and is uniquely a creature of state law. *Severance v. Patterson,* 370 S.W.3d 705, 713 (Tex. 2009). It is indisputable that this Court did not apply state law in adjudicating this partition action in federal diversity. *McComb v. McCormack,*159 F.2d, at 226.[3]   The decision amounted to this Court's simply ignoring Texas law and its requirements for setting boundaries in favor of a system of its own devising.

41.      But for the Fourteenth Amendment due process violation, the Tenth Amendment violation would certainly not have occurred.   Had the Sieberman Survey owners been joined in the suit, they would have had the opportunity to object to the improper state law application by the federal court.   This Court should vacate the Federal Judgment as to the Sieberman Survey to

---

3 The federal 5th Circuit opinion, that was affirmed on other grounds, evidences three flagrant judicial errors of omission of application of state law.   First, in Texas "[t]he cardinal rule is that the footsteps of the original surveyor… should be followed." *T.H. Investments, Inc. v. Kirby Inland Marine, L.P.,* 218 S.W.3d 173, 207 (Tex. App.—Houston [14th Dist.] 2007, pet. denied)**.**    This Court did not rely upon the GLO's original witness marks for the Hodge Survey in subject of the suit. Second, this Court did <u>not</u> review or rely upon the original footstep or witness marks for the Sieberman Survey *certified* in the GLO files much less even review the survey or consider the title owners absence. *Id.* Third, "*stare decisis* is never stronger than in protecting land titles, as to which there is great virtue in certainty." *Blaffer v. State,* 31 S.W.2d 172, 191 (Tex. 1930).   The *stare decisis* in the instant case is the GLO's historic, certified and current Seiberman Survey boundaries and land titles never questioned until 2016.

correct this Court and the state court's erroneous decision to the extent that it incorrectly adjudges rights of due process.

**COUNT 1**
**CLAIM FOR DECLARATORY JUDGMENT**

42.    Paragraphs 1 through 41 are incorporated herein by reference.

43.    This is an action for declaratory relief pursuant to 28 U.S.C. § 2201.

44.    This is an actual and justiciable case and controversy between COLLINS, the descendants or successors in interest to the Frederick Sieberman Survey, A-497, owners and land, and HORTON, the successors in interest to the James Hodge Survey, A-19, regarding the enforceability and validity of the Federal Judgment.   COLLINS seeks to have his status as the record title owner of the Sieberman Survey and declaration of its existence restored with respect to this controversy.

45.    HORTON claims record title ownership of the Frederick Sieberman Survey, A-497, land to which it is a stranger to title from the sovereign, by virtue of its cash purchase without warranty in Dec. 2012 of land located only in the James Hodge Survey, A-19 and whose only basis for such claim is the Federal Judgment entered in 1944 without joinder, service or notice until 2016 of the Sieberman Survey owners, now COLLINS from the sovereign.   The trial court without consideration or adjudication on the merits of the Federal Judgment determined summarily that the Frederick Sieberman Survey, A-497, did not exist contrary to all government records in derogation of COLLINS' title ownership and rights.

46.    HORTON has filed and registered its judgment from the state court in the Montgomery County property records, a state court judgment granted title to HORTON without any title basis except the void Federal Judgment and that incorrectly affirmed this Court's void Federal Judgment which was obtained without due process.   HORTON cleared all the forest and

22

trees from COLLINS' Sieberman Survey land and included the land in its subdivision plats as its own, thereby injuring COLLINS.

47.     COLLINS believes the Federal Judgment is infirm, void, invalid and unenforceable in the absence any due process of any kind; consequently, COLLINS requests his rights be fully restored, his record title be fully restored, the Frederick Sieberman Survey, A-497, be declared existential in accordance with the State of Texas General Land Office, all witness marks and ground surveys, Texas Railroad Commission, and COLLINS' record title from the sovereign.

48.     COLLINS has suffered injury resulting from HORTON's conduct because COLLINS has a financial and real property record title interest in the Sieberman Survey land, which HORTON claims ownership thereof via judicial mandate from State court based solely on the void Federal Judgment.   COLLINS' life has been significantly disrupted by HORTON's actions of claiming COLLINS' land, including COLLINS' property in its planned Fosters Ridge subdivisions, clearing all COLLINS' land, arresting COLLINS for trespass on his own land, converting COLLINS personal property by removing and destroying COLLINS' $15,000.00 fence, and building homes on the Sieberman land, then selling such homes to innocent third parties despite a valid *lis pendens.*

49.     COLLINS therefore brings this action asking this Court's declaration and determination of the rights of the parties by vacating the Federal Judgment obtained in the absence of due process in dereliction of the constitutional and property rights of the Sieberman descendants, successors in interest, assigns and current record title owner from the sovereign, COLLINS.

## COUNT 2
## INDEPENDENT ACTION TO OBTAIN RELIEF FROM JUDGMENT BASED ON FEDERAL RULE 60(b)(4) AND 60(d)(1)

50.     Paragraphs 1 through 41 are incorporated herein by reference.

51.     The Federal Judgment should not, in equity, law and good conscience, be enforced.

52.     COLLINS has several meritorious defenses supporting his record title ownership as well as the existence of the Frederick Sieberman Survey, A-497, on which the Federal Judgment and state summary judgment of title ownership were improperly founded, specifically:

a.     This Court lacked personal jurisdiction over the Sieberman owners, descendants, successors in interest and assigns of the Frederick Sieberman Survey, A-497, land in the absence of due process (Exhibits A-Federal Judgment; Exhibit B-Federal Suit; Exhibit C-Federal Opinion; Exhibit D-Affidavits);

b.     No service, joinder, notice, participation or knowledge of the Federal Suit or Federal Judgment was made on the Sieberman owners, descendants, successors in interest and assigns, including COLLINS, of the Frederick Sieberman Survey, A-497, so as a matter of law, the Federal Judgment is void as to the Sieberman Survey land and owners (Exhibits A-D); *Peralta v. Heights Medical Center, Inc.,* 485 U.S. 80, 84 (1988).

c.     It is undisputed that the Hodge Survey owners, their descendants, successors and assigns, including HORTON, do not claim ownership by limitations but only by virtue of the void Federal Judgment as to the Sieberman land.   Take judicial notice of HORTON's claims and replies in and to its August 2016 motion for summary judgment filed in the 284th Judicial District Court of Montgomery County, Texas under cause number 15-04-04236;

d.     It is undisputed that the Frederick Sieberman Survey, A-497, has existed since the patent was issued by the GLO in 1866 (Exhibit E-GLO certified records of July 2016; Exhibit F-GLO Screenshot in 2016; current GLO hyperlinks:

https://s3.glo.texas.gov/ncu/SCANDOCS/archives_webfiles/arcmaps/webfiles/landgrants

/PDFs/3/1/1/311087.pdf and

https://cgis.glo.texas.gov/cfGIS/glomapjs/basefile.cfm?SDENUM=483390449 .

      e.      It is undisputed that the Frederick Sieberman Survey, A-497, is an existing survey in the records of the State of Texas, County of Montgomery, Montgomery County Appraisal District, City of Conroe and real property records as delineated by the ground surveys performed by registered county surveyors that concluded not once, but twice twenty years apart, the ground surveys and witness marks for the Frederick Sieberman Survey, A-497, exist exclusive of any other land surveys, including the James Hodge Survey, A-497 (Exhibits E, F, hyperlinks, Exhibit G-Montgomery County Appraisal District screenshot certified March 2017; Exhibits H through K-City of Conroe certified records showing City approved of the patents designated by HORTON of the Sieberman Survey within its subdivision and **HORTON fraudulently modifying its records** to eradicate any mention of the Frederick Sieberman Survey from those same records once HORTON learned COLLINS owned the record title and was properly claiming it; Exhibits L and M-HORTON's certified deposition records showing it relied upon the Texas Railroad Commission records that reflected the existence of the Sieberman Survey that HORTON did NOT acquire the record title).

      f.      It is undisputed that the James Hodge Survey owners did not in any way include the Sieberman owners as parties to the Federal Suit, then committed fraud on this Court by asserting the James Hodge Survey, A-19, boundaries extended south an additional 1000 feet from the witness marks and surveys certified with the GLO, to include all of the Frederick Sieberman Survey, A-497, land without joining the Frederick Sieberman owners or the GLO, or the GLO certified records, nor applying the substantive State of Texas law

required to determine boundaries and record title ownership in the absence of the necessary parties to defend their title (Exhibits A-D);

g.     It is undisputed that HORTON recognized and included the Frederick Sieberman Survey in its own records and government filed ground surveys for its subdivision despite not obtaining record title ownership of the Sieberman Survey (Exhibits H-M);

h.     It is undisputed that the state boundary and state laws to determine title on which the claim of the Hodge Survey owners, their descendants, successors and assigns, including HORTON, were based were unenforceable due to the lack of the requisite statutory implementation and elements primarily because the necessary Sieberman Survey owners were not present to ensure same (Exhibit C-F);

i.     The statutory state substantive laws to determine boundaries and record title ownership (*i.e.*, trespass to try title), on which the Hodge Survey owners, their descendants, successors and assigns, including HORTON, based the enforceability of the Federal Judgment were on their face improper to support the Frederick Sieberman Survey, A-497, land could enlarge the James Hodge Survey, A-19, one (1) league patent of land nor deprive the Sieberman owners, their descendants, successors and assigns, including COLLINS, of his land (Exhibits C-F); and,

j.     All other defenses raised by Attorney Collins in this Complaint.

45.    The Sieberman Survey owners, their descendants, successors and assigns, including now COLLINS, were prevented from asserting or otherwise obtaining the benefits of these defenses, because they were never joined, served, notified, had knowledge of or in any of the barest

way allowed to or voluntarily participate in the Federal Suit, Federal Judgment of Federal Appeal against them and were, thus, denied the opportunity to represent and defend themselves.

53.     The efforts by the Hodge Survey owners, their descendants, successors and assigns, including now HORTON, to name, locate, serve, join or notice the Sieberman Survey owners, their descendants, successors and assigns, now COLLINS, of the underlying Federal Suit and Federal Judgment were non-existent, so insufficient as a matter of law, and failed to satisfy due process rights.

54.     There was no consideration of the merits of the claims regarding the claim of ownership and boundaries of the Frederick Sieberman Survey, A-497, land by this Court or any other court.

55.     Moreover, there was an unconscionable plan or scheme by the Hodge Survey owners, their descendants, successors and assigns, including now HORTON, to improperly influence this Court and the state courts, and the integrity of the judicial process was fraudulently subverted by this deliberately planned scheme.  Specifically, upon information and belief, the Hodge Survey owners, their descendants, successors and assigns, including now HORTON, committed fraud on this Court and the state courts.

56.     First, the Hodge Survey owners intentionally lied to this Court that all the necessary parties were joined, served and included in the Federal Suit, knowing that the Frederick Sieberman owners (nor the GLO) were not joined, served or noticed (much less any certified GLO patent surveys and records introduced as evidence), then testified to this Court that the Frederick Sieberman Survey, A-497, land was included in their Hodge Survey land—thereby increasing their one (1) league land grant by over 400 acres usurping the Sieberman Survey land without the knowledge of the Frederick Sieberman owners nor any state agencies.

57.     Second, HORTON, the successor in interest to the Hodge Survey owners, their descendants, successors and assigns, also committed fraud on this Court and the state courts by filing a lawsuit which it knew or should have known was invalid due to the lack of due process in the underlying Federal Judgment which was HORTON's only basis for title.    HORTON purchased the stolen Sieberman title from the Hodge Survey owners, their descendants, successors and assigns knowing the Federal Judgment was void and no limitations had occurred that would divest the Sieberman owners of their land.    This is evidenced by HORTON, a $17 billion savvy land developer, acquiring the "Hodge" land with a warrantless deed that HORTON prepared in a cash sale purportedly with no title run or attorney title review that closed in about sixty (60) days covering a multi-million dollar 800 acre tract of land.    It is on information and belief that HORTON hoped that the Sieberman owners would not object to the undisclosed title transfer of their richly forested land until limitations could legally occur—unknown because the title transfer documentation never referenced or indexed the Sieberman Survey so the Sieberman owners, including now COLLINS, could not have been on notice except for the actual visual activities HORTON commenced by trespassing unto COLLINS' land and destroying and converting COLLINS' fence on or near 2016.    When HORTON's plan failed, they claimed to the state court, contrary to all state records and even HORTON's own survey records, that the Sieberman Survey did not exist.    HORTON directed the state court to this Court's void Federal Judgment, as its only basis for title, to which COLLINS, the owner of the Sieberman Survey record title ownership and land, has vehemently fought HORTON's fraud to date to prevent divestiture of COLLINS' land and property.

58.     No fault or negligence by the Sieberman Survey owners, their descendants, successors and assigns, including COLLINS, contributed to the entry of the void Federal Judgment.

59.     There is not adequate remedy at law.

60.     Given the foregoing facts, the Federal Judgment is void and unenforceable and must be set aside as to the Frederick Sieberman Survey, A-497, land and ownership in order to prevent a grave miscarriage of justice.

61.     Redress and vacatur of the Federal Judgment is central to the outcome of correcting this miscarriage of justice.   A grant of vacatur would be outcome-determinative to allow title to remain vested in the true record title owner from the sovereign, and, more importantly, would vindicate due process rights, while recognizing the primacy of state real property law.

62.     How can property owners be stripped of title when never made party to the suit that took away their rights?   The answer is that, consistent with due process, they cannot.   The void Federal Judgment gives short shrift to this Court's long-standing protection of essential due process rights and the equally significant policy in favor of local control over real property, its ownership, and its regulation.   The constitution and federal statutes cry out for correction of this error and to affirm the essentiality of Fourteenth Amendment rights, and particularly the remedy permitted under Federal Rule 60 for this exact type of injustice.   This is about the deprivation of basic due process rights, enshrined in the Constitution.

63.      The United States Supreme Court has consistently stated that the Fourteenth Amendment requires judicial proceedings to be conducted in a fundamentally fair manner. *Lassiter v. Department of Social Service of Durham City,* 452 U.S. 18, 33 (1981).  How is it fundamentally fair or even legal for the state court to validate the void Federal Judgment that is

irrevocably infirm under the Fourteenth Amendment, not address the constitutional due process violation, then to summarily award land title against all requisites of state property law in violation of the Tenth Amendment?

64.     The ironic history of our country's fight for justice and independence further illustrates the significance of why our judicial process was created by our founding fathers. Frederick Sieberman was granted this land patent for his heroism at Goliad as a memorial to his honor for fighting for and dying for Texas' independence in March 1836.   On Dec. 6, 1941, the day before the United States entered World War II to defend democracy and our country, the Hodge owners filed suit to partition the Hodge Survey due to timber theft, given an oddly appropriate cause number 666.   On May 31, 1944, one week before D-Day when the United States courageously landed at Normandy to commence the events that led to victory for our country and the democracy, this Court entered the Federal Judgment contrary to our constitution and all ethos because the Hodge owners committed fraud on this Court by asserting they owned the Sieberman Survey land by producing an erroneous survey and not joining the record title owners to defend their title had they known of the pendency of the Federal Suit and Federal Judgment.   Ancient and still valid law, not unlike the Sieberman Survey, mandates "[n]ever move an old property line that your ancestors established" Proverbs 22-4.   Further, "[n]ever move an old property line or take over land owned by orphans.   The Lord is their powerful defender, and he will argue their case against you."   Proverbs 23-10, 11.   The Hodge owners moved the old and patented Hodge Survey boundary line south 1000 feet to improperly usurp and convert the Sieberman Survey as their own. HORTON now attempts nearly eighty (80) years later with a warrantless deed from a cash sale to take over the Sieberman Survey land for the first time from the Sieberman record title owner,

COLLINS, by asserting the Federal Judgment extinguished it.   This is fraud, wrong, unconstitutional, theft, unethical and in direct conflict with this Court's laws as well as the Bible.

## COUNT 3
## INDEPENDENT ACTION TO OBTAIN RELIEF FROM JUDGMENT BASED ON FEDERAL RULES 60(d)(1) AND 60(d)(3) FRAUD ON THE COURT

65.     Paragraphs 1 through 41 are incorporated herein by reference.

66.     The information submitted by the Hodge Survey owners, their descendants, successors and assigns, to this Court in the 1941 federal suit was false.   This Court relied upon the Hodge Survey owners, their descendants, successors and assigns' submission to their detriment.   As a direct and proximate result of the Hodge Survey owners, their descendants, successors and assigns' fraudulent conduct, COLLINS has suffered damages.   Indeed, the Hodge Survey owners, their descendants, successors and assigns, now including HORTON, and their attorneys blatantly lied to this Court.   They got away with the lie for many years because they did not allow their fraud to become known to any government agencies responsible for maintaining title records nor to the Sieberman record title owners.   They did this by not using the land, not referencing the name Sieberman anywhere in the judgment or in the public records so it could not be indexed or discovered by the Sieberman record title owners, their successors and assign—while the Sieberman owners, including now COLLINS, continued in blissful ignorance to maintain the land as their own.

67.     Here, the Hodge Survey owners, their descendants, successors and assigns, now HORTON, made a material misrepresentation of fact or law to the 1944 judge at the bench trial that all the necessary parties, including the Sieberman record title owners were joined and served, then presented an erroneous survey that did not evidence the existence of the GLO's Sieberman Survey when all GLO patent records, ground surveys, witness marks and government plats

properly reflected the existing Sieberman survey, A-497.   The Hodge owners and their attorneys applied incorrect state substantial law to surreptitiously divest the Sieberman record title owners, now COLLINS, of their land without due process.   They did so with knowledge of the falsity, intent to deceive the Court, in which the Court justifiably relied resulting in the damages of COLLINS' record title now being stolen.   The attorneys for the Hodge owners were officers of this Court and perpetuated the fraud directed at this Court and the Court believing the uncontroverted testimony (because the Sieberman owners were not joined to defend their actual record title), the Court was in fact deceived.   Thus, the Hodge owners, now HORTON, committed fraud on this Court, so this Court should set such 1944 judgment aside as to the Sieberman land.

68.     The Hodge owners, their predecessor in interest now being HORTON, testified in the 1944 bench trial that they owned the Sieberman Survey land by using a metes and bounds description that fraudulently extended well beyond the patented survey and witness marks located and filed in the GLO certified records for the James Hodge survey; thereby, usurping the Sieberman Survey land.   The Hodge owners deceitfully never mentioned or acknowledged in their testimony or plats presented the "Seiberman" survey name despite the patent's existence in all government records since 1866 including a recent GLO county master survey plat completed in and on file on March 31, 1943 (See Exhibit E).   The Hodge owners instead used their own fabricated survey that did not reflect or use the *actual* patented GLO Sieberman Survey or *actual* patented GLO James Hodge Survey original witness marks.   One of the Hodge owners' surveyors testified to this Court that he found patented original witness marks but this Court chose not to follow them contrary to state survey law, to-wit:

> "Boyles [Hodge party surveyor] had located the lines of the James Hodge league by certain witness marks on the ground.  *None of these witness marks were originally placed by Wightman [the original county survey for the GLO established patent] but they were accepted by everyone [at the trial except the necessary parties*

> *the Sieberman owners who would have EMPHATICALLY contested this fraud had
> they been joined] as the true boundaries of the James Hodge Survey.* Atkinson
> [another Hodge surveyor but one who contested Boyles findings] never made a
> complete survey of the James Hodge Survey, but he claimed that Boyles had
> misplaced the James Hodge Survey because Atkinson *had located one of the
> original Wightman witness marks at the Northwest corner of the survey.*"

*McComb v. McCormack,* 159 F.2d 219, 226 (5th Cir. 1947), attached as Exhibit C.  Had the

Sieberman Survey owners been joined and served so as to be able to participate in the 1944 federal

trial, or even if the Hodge owners had used the proper state surveying law with the certified GLO

survey plats (which the Sieberman owner would have mandated had they been present), the Federal

Judgment would not have been defective nor have improperly "extinguished" an entire existing

GLO survey that belonged to others, the Sieberman Survey owners, now COLLINS as the

successor to such interest.

69.     The reason this Court accepted the bogus Hodge survey presented by the Hodge

parties is because none of the necessary Sieberman record title owners were joined to contest the

fraud of the Hodge owners converting the Sieberman record title owners' property.  This Court

should grant vacatur of the Federal Judgment.

### COUNT 4
### TRESPASS TO TRY TITLE

70.     Paragraphs 1 through 41 are incorporated herein by reference.

71.     Federal courts, when confronted with the issue of whether to apply federal or state

law in a lawsuit, must apply state law on issues of substantive law.  *Erie Railroad Co. v.
Tompkins*, 304 U.S. 64 (1938).   Texas law governs interest in land titles as well as surveys and is

uniquely a creature of state law.   *Severance v. Patterson,* 370 S.W.3d 705, 713 (Tex. 2009).

72.     Under Texas law, HORTON has the burden to prove superior title via a trespass-to-try-title claim, as it "is the <u>only</u> way or method to perfect, claim or vest title to real property in Texas."   *Martin v. Amerman,* 133 S.W.3d 262,265 (Tex. 2004).

73.     A trespass-to-try-title claim has never been adjudicated on the merits for the Frederick Seiberman Survey, A-497.   However, the state court improperly awarded title to the Sieberman Survey land under a "quiet" title suit to HORTON.   *Collins v. D.R. Horton-Texas Ltd.*, 574 S.W.3d 39, 46 (Tex. App.-Houston [14th Dist.] 2018).   The state's order of awarding title under a quiet title suit has no legal effect because a quiet title suit cannot grant or divest title. Since HORTON is a stranger to the Sieberman Survey title and its only basis for title is the void Federal Judgment the subject of this vacatur, this Court has jurisdiction under this proceeding to properly determine title for the Frederick Sieberman Survey, A-497, under a trespass to try title suit brought herein in this Complaint.

74.     "To prevail in a trespass-to-try-title action, a plaintiff must (1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned." *Id.*   HORTON cannot prove a regular chain of conveyances back to the sovereign or superior title.   HORTON vehemently denies title by limitation.   HORTON, nor their predecessors in title, ever possessed the Sieberman Survey land.   However, COLLINS can prove a regular chain of conveyances from the sovereign, superior title out of the common source of the Vernon Evans' and James Collins' heirs as averred in the attached affidavit Exhibit D2 and by further proof if necessary.

75.     COLLINS asserts a trespass to try title claim to the Sieberman Survey, A-497. HORTON improperly and fraudulently drafted a warrantless deed to itself based on a knowingly

void Federal Judgment, being its only foundation for title. COLLINS requests this honorable Court to declare the Property to be owned by COLLINS.

## JURY DEMAND

76.    Plaintiffs request a jury on all issues of right to be tried by a jury pursuant to Federal Rule of Civil Procedure 38.

## PRAYER

**WHEREFORE PREMISES CONSIDERED**, COLLINS prays that:

a)  HORTON be cited to answer and appear herein, and that upon a final trial hereof;

b)  This Court entertain this declaratory judgment action and enter an order declaring the Federal Judgment void and unenforceable as to the Seiberman land and owners, the Frederick Sieberman Survey, A-497, for all purposes against all parties, including HORTON;

c)  This Court adjudicate that the Frederick Sieberman Survey, A-497, is an existing patented State of Texas GLO land survey that comports with the GLO certified patent, ground surveys, witness marks and chain of title from the sovereign;

d)  This Court enter an order that COLLINS is the record title owner from the sovereign of the Frederick Sieberman Survey, A-497, as evidenced by the requisite elements of the substantive Texas law for trespass to try title and survey boundary law; and,

e)  COLLINS recover of and from HORTON his damages as shown at the time of trial, his reasonable and necessary attorneys' fees, costs and litigation expenses, and such other and further relief, both general and special, legal and equitable to which he may show himself justly entitled.

Respectfully submitted,

LAW OFFICE TONI L. COLLINS

s/ Toni L. Sharretts Collins
TONI L. SHARRETTS COLLINS
TBN 24037476; USBN 34208
11054 North Hidden Oaks
Conroe, Texas   77384
*iceattorney@aol.com*
281-827-7749